IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Duana J.,  )<br> )<br>       Plaintiff,  )<br> )<br>    v.  )<br> )<br>Frank Bisignano,  )<br>Commissioner of Social Security,  )<br> )<br>       Defendant.  ) | Case No.: 24-cv-50088<br><br>Magistrate Judge Margaret J. Schneider |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, Duana J., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On September 20, 2017, Duana J. ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income. R. 14. In both applications, she alleged a disability beginning on December 31, 2016. *Id*. Her applications were denied initially, upon reconsideration, and by ALJ decision dated May 27, 2016. R. 14-30. Plaintiff sought judicial review, and this Court remanded the decision for further administrative proceedings based on the parties' agreed motion for remand. R. 2955. Plaintiff subsequently filed another claim for Title II disability benefits on February 1, 2022. R. 2826. That claim was consolidated with the remanded claim. *Id*.

On remand, ALJ Jessica Inouye held telephonic hearings on November 10, 2022 and July 27, 2023. R. 2826. Plaintiff, represented by counsel, appeared and testified. *Id*. Thomas H. Heiman, an impartial vocational expert ("VE"), also appeared and testified. *Id.* On October 31, 2023, the ALJ issued a written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 2826-2845. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [13]. Now before the Court are Plaintiff's motion to reverse or remand the Commissioner's decision [16], the Commissioner's response brief [19], and Plaintiff's reply brief [20].

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2016. R. 2829. At step two, the ALJ found that Plaintiff had the following severe impairments: pancreatitis and obesity. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 2831.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work except no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; and avoid all exposure to temperature extremes of hot or cold, workplace hazards including unprotected heights and dangerous moving machinery, and vibrating tools and work surfaces. R. 2831-2842. At step four, the ALJ reserved a finding on past relevant work. R. 2842. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 2842-2844. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from December 31, 2016, through the date of decision, October 31, 2023. R. 2845.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

2

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) improperly relying on the vocational expert's ("VE") testimony at step 5; (2) ignoring subpoena requests; and (3) ignoring post-hearing objections. She also alleges a violation of due process. The Court finds that the ALJ adequately relied on the VE's testimony, did not err by failing to issue Plaintiff's subpoena requests, and appropriately addressed Plaintiff's post-hearing objections. In addition, there was no violation of Plaintiff's due process rights. Accordingly, the Court affirms the ALJ's decision.

At step 5, the Social Security Administration "bears the burden of showing that a significant number of other jobs are available to the claimant." *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020). At this step, ALJs often rely on VEs to estimate the number of jobs that exist in significant numbers in the national economy for an individual with the claimant's experience and limitations. 20 C.F.R. § 416.966(e). The substantial evidence standard requires ALJs to "ensure that the approximation is the product of a reliable method." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). When a claimant challenges a VE's estimate, ALJs "must require the VE to offer a reasoned and principled explanation" of the method used to produce the estimate. *Id*. at 970. A methodology is "reliable when it is based on 'well-accepted' sources and its steps are 'cogently and thoroughly' explained." *Hohman v. Kijakazi*, 72 F.4th 248, 253 (7th Cir. 2023) ("The VE's testimony need only 'instill some confidence that the estimate was not conjured out of whole cloth.'" (quoting *Brace*, 970 F.3d at 822)).

Both the ALJ and counsel for Plaintiff questioned the VE about his methodology at the original hearing on November 10, 2022 and at the supplemental hearing on July 27, 2023. R. 2924-2934, 2873-2886. The VE testified that to estimate job numbers, he first looks at the Occupational Employment Survey ("OES") database from the Bureau of Labor Statistics ("BLS"), which provides jobs in Standard Occupational Classification ("SOC") code groupings. R. 2924, 2873. Each SOC grouping contains a varied number of jobs from the Dictionary of Occupational Titles ("DOT"). R. 2924. To estimate the DOT job numbers from the SOC data, the VE did not use the "equal distribution method," which the Seventh Circuit has criticized. R. 2880, 2924. *See Chavez*, 895 F.3d at 967. Instead, he relied on his 27 years of professional experience, the 2,000 labor market studies he has conducted, and his discussions with colleagues about their perceptions of the economy and job numbers. R. 2924-2926, 2878-2882. He further elaborated that within the last ten years he had conducted labor market surveys covering each of the jobs he discussed during the hearings. R. 2926-2927.

Plaintiff argues that ALJ could not rely on the VE's job estimates because the VE did not sufficiently explain his methodology. However, the VE did not vaguely assert that his job estimates were the result of undefined "weighting." *See Brace*, 970 F.3d at 822. Instead, he testified that he calculated his job estimates by drawing on BLS data, his professional experience, the knowledge of his peers, and his own labor market studies. R. 2924-2926, 2878-2882. He explained that he relied on his first-hand experience placing people into jobs as well as his familiarity with job trends, including what jobs tend to fade, to be replaced by technology, or to move internationally. R. 2878, 2880. This explanation was sufficient to satisfy the substantial evidence standard. *See Fetting v. Kijakazi*, 62 F.4th 332, 339 (7th Cir. 2023) (holding that ALJ could rely on VE's job estimates which were based on "OES numbers and his thirty years of job placement experience");

*see also Chavez*, 895 F.3d at 970 ("[T]he VE could support the approximation by, for example, drawing on knowledge of labor market conditions and occupational trends, gleaned from reviewing relevant data sources or from placing workers in jobs."). The VE did not need to use commercially available software to calculate the job estimates, nor did he need to be familiar with a 2012 Cornell Law School labor study. R. 2873, 2875. *Fetting*, 62 F.4th at 339 (VEs are "not required to use a market study, computer program, or publication to make [their] calculation[s]."). Additionally, contrary to Plaintiff's assertions, the VE did not testify that it was "impossible" for him to estimate DOT job numbers, only that it was impossible to get "any *exactitude*" in job numbers. R. 2874 (emphasis added). *See Chavez*, 895 F.3d at 970 ("A VE's estimate will be just that—an estimate."). "A VE who, as here, provides a reasoned explanation based on hands-on experience working in the field, market surveys, or conversations with employers, can establish sufficient confidence in his job-number estimates." *Hohman*, 72 F.4th at 254.

Plaintiff also argues that the ALJ failed to sufficiently question the VE's methodology. An ALJ must examine a VE's methodology once challenged. *See Ruenger v. Kijakazi*, 23 F.4th 760, 764 (7th Cir. 2022) ("[W]hen a claimant challenges a vocational expert's job-number estimates, the ALJ has a duty to spend time inquiring into the expert's methodology."). The ALJ asked the VE one question about his methodology and the VE provided a detailed response. R. 2924-2925. The ALJ was entitled to rely on the VE's cogent and reasoned response. *See Fetting*, 62 F.4th at 340 (concluding that the ALJ did not need to "seek further clarification" because the VE's testimony "did not give the ALJ any reason to suspect that his methodology was unreliable"). Additionally, the ALJ fulfilled her duty to inquire into the VE's methodology by allowing Plaintiff's counsel to extensively question the VE over the course of two separate hearings. R. 2926-2937, 2873-2886. *See Ruenger*, 23 F.4th at 764 (finding that ALJ's duty to inquire into a VE's methodology "may require that ALJs ask more questions of [VEs] *or* slow down proceedings to give claimants a greater opportunity to pose their own questions" (emphasis added)).

Another claim of error raised by Plaintiff is the ALJ's failure to issue requested subpoenas. At the request of a party, an ALJ may issue a subpoena "[w]hen it is reasonably necessary for the full presentation of a case." 20 C.F.R. § 404.950(d). A request for a subpoena must "state the important facts that the . . . document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." *Id*. Plaintiff sent pre-hearing memoranda to the ALJ on October 26, 2022 and July 12, 2023. R. 3157, 3220. Plaintiff asked the ALJ to accept both memoranda as subpoena duces tecum requests for the VE "to have and bring with them all materials they will be relying upon for their testimony, including any third-party private software-based job estimation programs." R. 3158, 3221. The ALJ did not issue the requested subpoenas. This Court reviews the denial of the subpoena requests for an abuse of discretion. *Krell v. Saul*, 931 F.3d 582, 586 (7th Cir. 2019).

The ALJ did not abuse her discretion by failing to issue Plaintiff's requested subpoenas. Plaintiff did not establish in her requests "why it was necessary for the expert to produce his sources, a prerequisite to obtaining a subpoena." *Krell*, 931 F.3d at 586; *see also* 20 C.F.R. § 404.950(d). The subpoena requests merely stated that "vocational issues" would be material in the case and that VEs are required to explain how they arrive at their opinions. R. 3158-3159; 3222. The requests did not "specify any facts that [Plaintiff] believed [the requested documents] would show," nor did they establish why questioning the VE about his methodology would be

insufficient. *Dwight W.B. v. Kijakazi*, No. 20CV02048, 2022 WL 985733, at *3-4 (S.D. Ind. March 31, 2022); *see also Krell*, 931 F.3d at 586 ("Why . . . couldn't counsel just question the expert about his sources at the hearing?").

With regard to the VE's testimony, Plaintiff also contends that she was denied due process because she did not have access to the VE's underlying data and could not adequately challenge the VE's testimony. The Court finds no denial of due process. There is no categorical requirement that VEs produce the data underlying their job estimates. *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019). Additionally, Plaintiff had full opportunity to cross-examine the VE about his methodology over the course of two separate hearings. Although the ALJ cut off Plaintiff's cross-examination of the VE and did not allow her to present a closing statement at the November 10, 2022 hearing, the ALJ held a supplemental hearing on July 27, 2023. R. 2844, 2938-2939, 2855-2886. The ALJ did not cut off Plaintiff or her counsel at that hearing and provided them the opportunity to conduct a thorough cross-examination. R. 2885-2886. Any error in ending the first hearing was harmless and there was no due process violation.

Plaintiff also claims that the ALJ improperly ignored her objections to the VE's testimony. R. 3227-3228. *See Krell*, 931 F.3d at 587 ("[The Seventh Circuit] ha[s] never mandated that post-hearing challenges be allowed, . . . [but] continue[s] to encourage ALJs to allow claimants to submit post-hearing argument about a vocational expert's testimony."). In her post-hearing memorandum, Plaintiff objected to (1) the VE's testimony about the Specific Vocational Preparation ("SVP") levels of the representative jobs and (2) the VE's job estimates as contradictory to SkillTRAN's job estimates. In her written decision, the ALJ acknowledged these objections. R. 2843-2844. As to the first objection, the ALJ noted that the VE testified that the representative jobs Plaintiff could perform have SVP levels of 2. R. 2843. She found that the VE's testimony was "consistent with the information contained in the [DOT]." *Id*. Plaintiff argues that the VE and the ALJ should have considered that the O*NET classifies the SVP levels of those occupations as at least 4. However, as the VE testified, SOC code groupings (which correspond with O*NET codes) do not identify SVP levels for individual jobs but provide SVP levels for groups of jobs. R. 2883. *See Sharol W. v. O'Malley*, No. 21CV3484, 2023 WL 9000493, at *6 (N.D. Ill. Dec. 28, 2023). Although Plaintiff criticizes the DOT as outdated, the SSA still considers the DOT to be an authoritative publication which VEs and ALJs may use to support their findings, including SVP levels. 20 C.F.R. § 416.966. As to Plaintiff's other objection, the ALJ noted that the VE did not find job number programs such as SkillTRAN "fully reliable for job estimates," but relied on his own professional experience, including "direct job number interviews, ongoing placement of employees, and [] consultation[s] with vocational experts around the country." R. 2844. As previously mentioned, neither the VE nor the ALJ needed to consider the job estimates of any particular software. *Fetting*, 62 F.4th at 339. The Court concludes that the ALJ addressed Plaintiff's objections and did not err in finding them "not persuasive." R. 2844.

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.

Date: August 4, 2025        ENTER: *Margaret J. Schneider*
<br>United States Magistrate Judge

5